FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Madison National Bank, Appellee,

v.

Morton A. BENDER, et al., Appellees/Appellants,

Van Dorn Retail Management, Inc., Appellant.

Nos. 98–5458, 98–5459.

United States Court of Appeals, District of Columbia Circuit.

Argued April 28, 1999.

Decided July 16, 1999

Nelson Deckelbaum, with whom Stephen W. Nichols was on the briefs, argued the cause for Morton A. Bender, et al., appellants in No. 98–5459.

Francis P. Dicello, with whom Robert M. Marino was on the brief, argued the cause for Van Dorn Retail Management, Inc., appellant in No. 98–5458.

Mary R. Bohan, Trial Attorney, U.S. Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, J. Christopher Kohn, Director, and Ruth A. Harvey, Attorney, U.S. Department of Justice, and J. Scott Watson, Counsel, Federal Deposit Insurance Corporation, were on the brief, argued the cause for appellee FDIC.

Before EDWARDS, Chief Judge, GARLAND, Circuit Judge, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Judge BUCKLEY.

BUCKLEY, Senior Judge:

Appellants are Morton A. Bender, his children, the personal representatives of the estate of a deceased child, and N Street Follies Limited Partnership (collectively, "Benders") and Van Dorn Retail Management, Inc. ("Van Dorn Retail"). They appeal the district court's award of attorneys' fees to the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for Madison National Bank, for legal services rendered in enforcing loan and guaranty agreements entered into between the bank and appellants. The Benders also

appeal the district court's denial of their motion for sanctions against the FDIC for its actions during the litigation.

We reverse the award of attorneys' fees incurred in unsuccessfully defending a prior award of fees, remand the remainder of the award for further action consistent with this opinion, and remand the denial of sanctions so that the district judge may explain his decision in light of what appears to be a legitimate question as to whether certain of the FDIC's actions may have been taken in bad faith.

## I. BACKGROUND

Appellants challenge the reasonableness of the attorneys' fees awarded by the district court, and the Benders ask us to rule that the court abused its discretion when it denied the Benders' request that the FDIC be sanctioned. In the interest of clarity, we will limit our review of this case's complex factual and procedural history to those facts that bear on each of these issues. A more detailed account of the background facts can be found in our opinion in *FDIC v. Bender*, 127 F.3d 58, 61–62 (D.C.Cir.1997) ("*Bender I*"), which decided a prior appeal in this case.

### A. The Attorneys' Fees

Appellants executed, guarantied, and delivered various promissory notes to Madison National Bank, some of which provided for payment, in the event of default, of "late charges" and attorneys' fees in the amount of 15 percent of the outstanding balance of principal and interest. Shortly after the last note was executed, Madison was declared insolvent; and the FDIC was appointed as its receiver pursuant to 12 U.S.C. § 1819. As such, the FDIC succeeded to all of Madison's rights under the promissory notes. When appellants defaulted on their obligations to Madison, the FDIC brought suit in district court to recover the full amount claimed to be due including, where applicable, the 15 percent attorneys' fees.

The FDIC moved for summary judgment on the notes. Appellants opposed the motion arguing, among other things, that the 15 percent attorneys' fees requested in the motion were unreasonable because the amount sought bore no relationship to the value of the legal services actually rendered. On October 27, 1994, the district court granted the FDIC's motion. Thereafter, the Benders filed a motion for reconsideration and, on April 17, 1996, the district court granted their motion and required the FDIC to address the reasonableness of the 15 percent provision. Because Van Dorn Retail did not file a timely motion for reconsideration, it remained liable for the 15 percent attorneys' fees the court had previously awarded the FDIC. The record before us does not indicate whether the agency ever complied with the court's request for a defense of the 15 percent fee. That request, however, was mooted by our decision in *Bender I*, which we describe below.

In the meantime, the FDIC had amended its complaint to include, among others, a new count asserting a claim against Morton Bender as guarantor of a note signed by Van Dorn Retail that contained the 15 percent attorneys' fees provision. The FDIC moved for summary judgment on the amended complaint, and the Benders filed an opposition to the motion. On February 28, 1996, the district court granted the motion in its entirety, ruling that the Benders' opposition had been untimely.

Appellants filed appeals challenging the district court's grant of summary judgment against Van Dorn Retail as obligor on certain of the notes and against Mr. Bender as guarantor of one of the loans to Van Dorn Retail. *See Bender I*, 127 F.3d at 61. On appeal, they argued that the provisions requiring payment of 15 percent attorneys' fees were contrary to District of Columbia law, which governed the enforcement of the notes. *Id.* at 63. We agreed; and on September 23, 1997, we reversed the district court's grant of summary judgment in favor of the FDIC with respect to

the attorneys' fees owed by Van Dorn Retail and remanded the case with instructions to award the agency reasonable attorneys' fees "not to exceed the 15–percent limit in the notes." *Id.* at 67. We also vacated the grant of summary judgment against Mr. Bender and instructed the court on remand to reconsider its 15 percent award against Mr. Bender as guarantor of the Van Dorn Retail note even though he had failed to file a timely opposition to the FDIC's motion for summary judgment. In doing so, we noted the anomaly of enforcing against a guarantor a greater liability than could lawfully be imposed on the obligor. *Id.* at 68.

The FDIC thereupon filed a "Motion to Determine Reasonable Attorney Fees," as well as a memorandum and declarations supporting a claim for $112,307. Over appellants' objections, many of which are reiterated in this appeal, the district court awarded the requested amount as reasonable. It did so based on its findings that the hours devoted to the case by the FDIC's Justice Department attorneys were reasonably expended, that the FDIC's summaries of the attorneys' time records provided an adequate basis on which the court could make an award, that the fee charged for the FDIC's in-house counsel was appropriate, and that appellants' "assertion of broad and unsupported challenges to the FDIC's proof of time expended—*unaccompanied by any request to view detailed time records*—must be rejected...." *FDIC v. Bender*, No. 93–0864 (D.D.C. Aug. 27, 1998) (emphasis added).

## B. The Requested Sanctions

The district court's order of February 28, 1996, concluded with the statement that "[f]inal judgment having now been entered by separate order as to [all counts of both the original and amended complaints], ... this case shall be terminated on the dockets of this court." The Benders responded with a "motion for expedited clarification" in which they reminded the court that, because it had failed to resolve a cross-claim against them, its judgment was not yet final. In an order issued on April 17, 1996, the court acknowledged its error and amended its February 28 order to reflect the fact that "the case is not terminated in light of the outstanding cross-claim...."

The FDIC, however, had already begun its efforts to enforce the earlier order. It served post-judgment interrogatories and document requests on appellants and issued subpoenas to their accounting firms. It also filed the February 28, 1996, order in the land records of the District of Columbia, thereby imposing a lien against all real property owned by appellants in the District of Columbia. The FDIC later refused to remove the lien despite the fact that, by then, according to Mr. Bender, the principal and interest due on all the notes had been fully paid and he had posted a supersedeas bond of $987,125 to cover in full all other claims remaining in dispute. The FDIC also applied a portion of the $1,896,987 payment made by the Benders in March 1995 against its claim for late charges on various notes despite the Benders' explicit instruction that the payment was to be applied to satisfy in full the principal and interest due on the specified notes and guaranties.

The Benders filed a motion requesting the imposition of sanctions against the FDIC on the grounds that, by prematurely pursuing its post-judgment remedies and ignoring the instructions accompanying the March 1995 payment, the agency had exhibited bad faith and unnecessarily increased the cost of the litigation. The court denied the motion without explanation on August 27, 1998, the same day that it approved the award of $112,307 in attorneys' fees.

Appellants appeal the award of attorneys' fees, and the Benders also appeal the denial of their motion for sanctions.

## II. Discussion

### A. The Fee Award

Appellants raise a number of objections to the fee award. We consider each in turn.

#### 1. *Documentation in Support of the Fee Award*

■ Appellants contend that, contrary to the district court's finding, they had specifically requested permission to review the FDIC's time records; therefore, the district court abused its discretion in awarding attorneys' fees to the FDIC notwithstanding its failure to produce the records for their inspection. In response, the FDIC cites our statement in *Bender I* that it is within the discretion of the trial judge to decide "what sort of proof, if any, is needed to determine what a reasonable fee would be," 127 F.3d at 64, and argues that the court therefore acted within its discretion in accepting the summaries of time records from the FDIC.

■ The law of this circuit is clear: the party challenging a fee award is entitled, upon request, to review the contemporaneous time records of the party seeking to recover attorneys' fees. *See Ideal Electronic Sec. Co. v. International Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C.Cir.1997) ("Ideal is entitled to discover the information it requires to appraise the reasonableness of the amount of fees requested by IFIC . . . so that it may present to the court any legitimate challenges to IFIC's claim."); *see also National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1329 (D.C.Cir.1982) ("[T]he opponent is entitled to the information it requires to appraise the reasonableness of the fee requested and in order that it may present any legitimate challenges to the application to the District Court.").

■ Contrary to the FDIC's suggestion, this principle is not inconsistent with our statement in *Bender I*, which applies in situations where a party has not sought contemporaneous time records in challenging a fee request. In such cases, the district court may rely upon whatever evidence it considers sufficient to establish the reasonableness of fees. *See Bender I*, 127 F.3d at 64. In this case, although the district court mistakenly found that appellants had not requested the FDIC's time records, the Benders in fact had done so in their response to the FDIC's Motion to Determine Reasonable Attorney Fees. Accordingly, we vacate the award of attorneys' fees and direct the district court to order the FDIC to produce its contemporaneous time records for appellants' inspection.

#### 2. *Fees for Work by In–House Counsel*

■ The materials submitted by the FDIC in support of its request for attorneys' fees included the sum of $10,000 for the estimated time spent on the case by the FDIC's in-house counsel. Appellants oppose the inclusion of this sum on two grounds, both of them valid. First, the time the counsel devoted to the case is insufficiently documented; and second, it is not possible to determine, from the FDIC's submissions, how much of the time in-house counsel did devote was in a capacity other than that of a mere liaison between the agency and the Justice Department attorneys who represented it in this case, a function for which the recovery of fees is not permitted. *See Milgard Tempering, Inc. v. Selas Corp. of America*, 761 F.2d 553, 558 (9th Cir.1985) ("Of course, if in-house counsel are not actively participating (e.g., acting only as liaison), fees should not be awarded."); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1499 (11th Cir.1983) (same).

■ The district court provided no reason for its inclusion of the $10,000 in the fee award other than that "it appear[ed] that fees for FDIC's in-house counsel are appropriate in this case." *FDIC v. Bender*, No. 93–0864 (D.D.C. Aug. 27, 1998). This explanation is inadequate. If, on remand, the court is to award any

**6**

amount for the in-house counsel's work, it must determine whether she contributed anything of substantive value to the litigation; and if she did, the court must then determine the approximate amount of time she devoted to that work as well as the hourly rate to be charged for it.

### 3. *Fees for Unsuccessful Defense on Appeal in* Bender I

▮ The district court's fee award included $21,500 for legal services incurred by the FDIC in its unsuccessful defense of the 15 percent attorney's fee provision in *Bender I.* Appellants argue that the court erred in including this amount because the FDIC is not entitled to reimbursement for fees incurred litigating an issue upon which it did not prevail. In response, the FDIC asserts that the *Bender I* appeal involved issues in addition to the validity of the 15 percent provision. It also maintains that, because it was the prevailing party in the litigation taken as a whole, the award properly included fees incurred in connection with the earlier appeal.

In disposing of the first argument, we need go no further than quote from the FDIC's final brief in *Bender I*: "The only issues on appeal are the contractual fifteen percent attorney fees awarded against [Van Dorn Retail and the Benders]." The accuracy of this statement is borne out by the fact that the FDIC's entitlement to 15 percent fees is the only issue we addressed in our *Bender I* opinion.

Appellants prevail on the second argument as well. In *Singer v. Shannon & Luchs Co.,* 779 F.2d 69 (D.C.Cir.1985), we noted that "a court may grant a fee award when specially authorized by contract or statute," *id.* at 70, but cautioned that "[w]here the merit or necessity of the creditor's claim or defense is successfully challenged, courts may decline to enforce attorney's fee provisions," *id.* at 71 (internal quotation marks and citation omitted). *See also Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("Where [a party] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."); *Anthony v. Sullivan,* 982 F.2d 586, 589 (D.C.Cir.1993) ("*[N]o* fee may be granted for work done on claims on which the party did not prevail, unless the unsuccessful claims were submitted as alternative grounds for a successful outcome that the plaintiff did actually achieve.") (emphasis in original). Although *Hensley* and *Anthony* dealt with statutory fee award provisions, we see no reason (absent contractual language to the contrary) why the same commonsense standard should not apply to fees awarded by agreement of the parties.

Accordingly, we reverse the district court's award of the $21,500 attributable to the *Bender I* litigation.

### 4. *Allocation of Fees*

▮ Finally, appellants maintain that the district court erred in failing to allocate its award of attorneys' fees among the four notes that are the subject of this appeal, each of which has its own obligors and guarantors. The FDIC responds that appellants waived their right to complain about the court's failure to apportion the fees because they never asked it to do so.

If this were the sole issue raised in this proceeding, we might not return the matter for further consideration. But as the district court will have to address a number of other issues on remand, we will add this one to the list. We are persuaded that appellants did not knowingly waive their challenge to the district court's failure to apportion the fees; and because different parties are liable on the four notes, the interest of fairness would be advanced by an apportionment. Therefore, if appellants raise this issue on remand, we direct the district court to allocate the fees.

### B. The Denial of Sanctions

■ The Benders complain that the FDIC acted in bad faith (1) by crediting their March 1995 payment in a way contrary to their explicit instructions, (2) by attempting to enforce the district court's judgments before they were final, and (3) by filing and then refusing to remove a lien against the appellants' real property despite the fact that they had paid the principal and interest due on all the notes and that Mr. Bender had posted a supersedeas bond sufficient to ensure payment of any amount that might remain owing to the FDIC. Given the nature of this conduct, the Benders maintain, the district court's unexplained denial of sanctions was an abuse of discretion.

The FDIC argues that the district court properly denied the Benders' motion. It maintains that because, prior to the tender of the March 1995 payment, it informed the Benders that it would credit the payment in accordance with the terms of the underlying note, it cannot be said that it acted in bad faith when it proceeded to do so. The FDIC also asserts that it did not engage in premature collection activity because it justifiably relied on the district court's statement, in its February 28, 1996 order, that the judgments on the complaint and the amended complaint were both final. The FDIC failed, however, to offer any justification for its refusal to remove the lien on appellants' property after the notes had been satisfied and the supersedeas bond covering any remaining liability had been posted. When asked about the lien at oral argument, counsel for the FDIC asserted that the agency had the right to pursue "redundant remedies." Counsel admitted, however, that the FDIC had used the lien for leverage in settlement discussions.

Whatever the merits of their first two allegations, we are satisfied that appellants raise a legitimate question as to whether the imposition of, and refusal to release, an apparently unnecessary lien constitutes bad faith. *See Chambers v.* *NASCO,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (holding that a court may exercise its inherent power to impose a sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citation and internal quotation marks omitted). The district court's decision not to impose sanctions may be correct, but under the circumstances it requires an explanation. We therefore remand this issue as well.

### III. Conclusion

For the foregoing reasons, we reverse the district court's award of attorneys' fees to the extent that it compensates the FDIC for fees incurred unsuccessfully defending the 15 percent fee provision; and we remand the remainder of the award for further findings consistent with this opinion. We also remand the district court's denial of sanctions so that the court may explain its decision in light of the fact that the Benders have raised a legitimate question as to whether the FDIC acted in bad faith.

*It is so ordered.*