Elliott v. Strafford County          CV-98-637-JD  01/25/01
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


Sheila Elliott

     v.                              Civil No. 98-637-JD
                                     Opinion No. 2001 DNH 019
Strafford County, et al.


                        O R D E R


     The plaintiff, Sheila Elliott, brings suit alleging civil

rights and state law claims arising from her arrest in Tennessee

on a New Hampshire warrant, the circumstances of her

transportation from Tennessee to New Hampshire, and her treatment

at the Strafford County House of Correction.  She brings claims

against Stafford County, New Hampshire; two county officials;

Transcor America, Inc., the transportation company hired by the

county to transport Elliott from Tennessee to New Hampshire; and

two Transcor employees.  The Transcor defendants, Transcor

America, Inc., Marlene Vogel, and Junious Hamm, Jr., move for

summary judgment on all of the claims against them.  Elliott

objects to summary judgment.


                     Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Background

Sheila Elliott drove from New Hampshire to Florida with her five-year-old son on November 17 or 18, 1995. On November 20, 1995, the chief of police in New Durham, New Hampshire, swore out a class A misdemeanor complaint, charging Elliott with interference with custody in violation of N.H. Rev. Stat. Ann. § ("RSA") 633:4. On November 22, the chief charged Elliott with a class B felony on the same charges, and a warrant was issued for her arrest. Elliott was arrested by the Paris, Tennessee, police

2

on December 22, 1995.  Elliott was jailed in Henry County, Tennessee, from December 22 until December 31, 1995.

On December 28, Elliott signed a waiver of extradition and agreed to return to New Hampshire.  The waiver form said that she agreed "to accompany New Durham New Hampshire P.D. as a prisoner of Strafford County, State of New Hampshire . . . ."  Strafford County hired Transcor America, Inc. to transport Elliott from Paris, Tennessee, back to New Hampshire.

Transcor employees, including defendant Marlene Vogel, arrived at the Henry County jail on December 31, 1995, to take custody of Elliott.  Once Elliott was in Transcor's custody, Vogel conducted a strip search of Elliott, including, apparently, a visual body cavity search.[1]  Transcor's policy was to strip search all prisoners before putting them into the transportation vehicle.

After the strip search, Transcor agents handcuffed Elliott, applied a restraint that secured her hands to her waist, applied leg irons, and placed her in a small metal cage inside of the transport van.  They first stopped in Nashville, Tennessee, where Elliott was transferred to a different van with officers Junious Hamm and Sylvester Rush.  During the remainder of the seven-day

_____

[1] See Blackburn v. Snow, 771 F.2d 556, 561 n.3 (1st Cir. 1985) (defining "strip search" and "visual body cavity search").

3

trip, whenever they stopped, Elliott was housed in secure facilities where she experienced substandard conditions including being required at times to sleep on the floor. They arrived at the Strafford County House of Corrections on January 7, 1995.

The charges against Elliott were later dismissed when it was determined that she had joint physical custody of her son at the time she was charged with interference with custody.

## Discussion

The Transcor defendants contend that they are entitled to summary judgment with respect to Elliott's civil rights claim based on the strip search on the ground that the search did not violate her constitutional rights, or alternatively, because they are protected by qualified immunity. They contend that four of Elliott's counts do not allege claims against them and challenge two other claims on the merits. They ask that this court decline supplemental jurisdiction if the federal claims against them are dismissed. Elliott objects to all of the defendants' grounds for summary judgment.

## A.   Strip Search

Elliott contends in Count I of her complaint that the strip search conducted by Vogel at the Henry County jail was

4

unreasonable and in violation of her Fourth and Fourteenth Amendment rights.[2]  Her claim is brought pursuant to 42 U.S.C.A. § 1983.  Vogel and Transcor argue that the search was not unreasonable, and alternatively, that Vogel is entitled to qualified immunity from liability as to that claim.[3]

Neither party has addressed the question of state action under § 1983.  See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  Apparently the Transcor defendants concede that in the context of this case, although Transcor is a private company, they are deemed to be state actors.  See, e.g., Wyatt v. Cole, 504 U.S. 158, 162 (1992); Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 938-39 (1982); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157 (1978).  Qualified immunity, however, is not necessarily available to private individuals who provide governmental services.  See Richardson v. McKnight, 521 U.S. 399,

---

[2]Although Elliott also alleges that the strip searches violated her due process rights, she is essentially claiming that the strip searches were unreasonable, in violation of the Fourth Amendment.  See Albright v. Oliver, 510 U.S. 266, 273 (1994); Bell v. Wolfish, 441 U.S. 520, 560-61 (1979) Magill v. Lee County, 990 F. Supp. 1382, 1386 (M.D. Ala. 1998).

[3]The parties do not question the basis of Transcor's liability under § 1983 for the search conducted by its employee, Vogel.  See, e.g., Daniels v. Williams, 474 U.S. 327, 334 (1986); Monell v. v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

402-04 (1997). Because Vogel has not shown that she would be entitled to qualified immunity based on the policy considerations underlying that doctrine and a history of immunity provided to persons in her position, she has not shown that the qualified immunity defense is available to her. See id. at 403-04.

To be reasonable within the meaning of the Fourth Amendment, "strip and visual body cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons." Swain v. Spinney, 117 F.3d 1, 7 (1st Cir. 1997). The appropriate inquiry is "whether, on [the particular facts of the case], an objective officer would have had a reasonable suspicion that [the arrestee] was concealing drugs or contraband on her person." Id. at 8. For that reason, searches conducted pursuant to blanket strip search policies, without particularized reasonable suspicion, are unconstitutional. See Blackburn, 771 F.2d at 563-65; see also Skurstenis v. Jones, 2000 WL 1880179, *2 (11th Cir. Dec. 28, 2000) (joining all other circuits to have considered issue in holding that strip search policy without reasonable suspicion violates Fourth Amendment).

The defendants contend that Elliott was strip searched pursuant to Transcor's policy to strip search all prisoners before beginning the transport. The defendants argue that the

6

strip search of Elliott was justified because she was going to be transported from the Henry County jail to the Strafford County jail which would involve contact with other inmates and "danger inherent in the transfer." The defendants do not, however, articulate any basis for a reasonable suspicion that Elliott was hiding contraband or weapons. She was charged with interference with custody, which does not involve weapons or contraband, and they took custody of her after she had spent more than a week in the Henry County jail. Based on the facts presented for summary judgment, a factual issue remains as to whether the Transcor defendants had reasonable suspicion to justify the strip search.

Defendant Junious Hamm contends that because no allegations are made as to him pertaining to the strip search, he is entitled to summary judgment on Count I. Elliott has not addressed the issue of whether she intended to make a claim against Hamm in Count I. Since there are no allegations about Hamm in Count I and because the undisputed facts are that he was not present or otherwise involved in the strip search, Hamm is entitled to summary judgment in his favor on Count I.


B.  Counts II, III, X, and XI

The Transcor defendants contend that Counts II, III, X, and XI do not allege any claims against them.

In Count II, Elliott alleges that the "Defendants' acts of arresting the Plaintiff on a New Hampshire warrant while located in Tennessee, contrary to the warrant on its face," violated her constitutional rights. Elliott does not differentiate among the various defendants named in the complaint, including the Henry County, Tennessee, defendants, who have been dismissed from the case for lack of personal jurisdiction. In her objection, Elliott contends that her claim should be interpreted to mean that the Transcor defendants unreasonably detained her. Despite her use of the word "detention" in the caption and once in the body of Count II, Count II alleges only that "Defendants' acts of arresting the Plaintiff" violated her constitutional rights. Elliott's imaginative interpretation of her claim is insufficient to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). See, e.g., Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 28 n.2 (1st Cir. 1996); Abdullah v. Acands, 30 F.3d 264, 269 n.6 (1st Cir. 1994). Since the record does not even suggest that the Transcor defendants arrested Elliott or participated in her arrest, Transcor is entitled to summary judgment on Count II.

In Count III, Elliott alleges that because she agreed in the extradition waiver to be released to the New Durham, New Hampshire, police, "Defendants' acts of releasing the Plaintiff

8

to a private, for-profit corporation, rather than to a police officer of the State of New Hampshire," violated her constitutional rights. Elliott asks that her allegations in Count III be construed to allege that the Transcor defendants "unlawfully transported the Plaintiff." Even if Elliott's allegations were susceptible to such an interpretation, she does not provide any factual support in the record with respect to actions by the Transcor defendants pertaining to her waiver of extradition. See Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000) ("The opposing party must offer 'definite, competent evidence' to defeat a properly supported motion for summary judgment." quoting Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000)). Therefore, because there is no trialworthy issue as to the Transcor defendants alleged in Count III, they are entitled to summary judgment.

Count X, which is titled "Respondeat Superior," names only Strafford County and the dismissed defendant Henry County, and Count XI, which is titled "Negligent Hiring, Training, and Supervision," names only Richard Cavanaugh, Robert LeClair, and the dismissed defendant Leon Williams. Elliott has not objected to summary judgment on these counts. Since the Transcor defendants are not included in Counts X and XI, they are entitled to summary judgment on those counts.

9

C.  Count IV - Violation of the Plaintiff's Right to a Speedy
    Trial, Assistance of Counsel, and Right to Bail

In Count IV, Elliott alleges that "Defendants' acts immediately after the Plaintiff's arrest, deprived the her [sic] of and violated her rights, privileges, and immunities to a speedy trial, bail and assistance of counsel . . . ."  The Transcor defendants argue that because they did not take custody of Elliott until December 31, nine days after she was arrested, they were not involved in acts immediately after her arrest.  Alternatively, the defendants argue that they did not violate the rights alleged.  Elliott argues that her allegations in Count IV charge the Transcor defendants with denying her requests to contact an attorney and denying her "speedy access to the New Hampshire Courts."[4]

Elliott states in her affidavit submitted in opposition to the defendants' motion for summary judgment that she asked the Transcor defendants to be allowed to contact an attorney and that they denied her requests.  In her deposition, however, Elliott testified about asking to contact an attorney as follows:

    Q.  So that I understand your testimony, you didn't ask
    the TransCor agents to allow you the opportunity to
    call a lawyer; isn't that true?

---

[4]Elliott is therefore deemed not to make a claim against the Transcor defendants based on alleged violations of her right to bail.

10

A. I might have asked them if I could call my family, but, you know, I didn't ask for a lawyer.

Elliott dep. at 150-51. Elliott offers no explanation for the contradiction between her affidavit and her deposition.

"When, as here, 'an interested witness had given clear answers to unambiguous questions, [she] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory but does not give an explanation why the testimony is changed.'" Williams v. Raytheon, 220 F.3d 16, 220-21 (1st Cir. 2000) (quoting Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994)). Since Elliott offers no competent evidence that the Transcor defendants denied her requests to contact an attorney, they are entitled to summary judgment with respect to her claim in Count IV based on a violation of right to assistance of counsel.

Elliott argues that the Transcor defendants "transported the Plaintiff in such a way as to deny her speedy access to the New Hampshire Courts." Assuming that Elliott is asserting a right to a speedy trial protected by the Sixth Amendment, she must show that a trialworthy issue exists in light of the four factors used to analyze such claims: "(1) length of delay; (2) reason for the delay' (3) defendant's assertion of [her] right; and (4) the prejudice to defendant." United States v. Salimonu, 182 F.3d 63,

11

69 (1st Cir. 1999).  A plaintiff cannot make a Sixth Amendment speedy trial claim absent a showing of prejudice.  See Reed v. Farley, 512 U.S. 339, 353 (1994).  Since the plaintiff has made no evidentiary showing as to any of the four elements and in particular has not shown that a trialworthy issue exists as to prejudice, the Transcor defendants are also entitled to summary judgment on the speedy trial part of Elliott's claim in Count IV.

D.  Count V - Violation of Right to Privacy

In Count V, Elliott alleges a violation of her right to privacy actionable under § 1983 and the common law of New Hampshire.[5]  The Transcor defendants argue that the strip search conducted by defendant Vogel did not violate Elliott's right to privacy for the same reasons that the search did not violate the Fourth Amendment.  Based on the record presented for summary

---

[5]Elliott does not explain what federal constitutional or statutory right to privacy, other than the Fourth Amendment right alleged in Count I, she might have intended to claim.  Instead, it appears that Elliott alleges only a state law privacy claim. Elliott cites Sutherland v. Kroger Co., 110 S.E.2d 716 (W.Va. 1959) in support of her claim.  Since Sutherland was premised on West Virginia law of trespass, it appears that Elliott intends to allege a similar claim under New Hampshire law, despite the lack of citation to relevant legal authority.  It is not necessary, however, to resolve the legal basis of her claim for purposes of the present motion for summary judgment.

12

judgment, a triable issue remains as to whether the strip search was supported by a reasonable suspicion. Since the defendants offer no other basis for summary judgment, the motion is denied as to Count V.

E. <u>Supplemental Jurisdiction</u>

The defendants ask the court to decline supplemental jurisdiction with respect to Elliott's state law claims. <u>See</u> 28 U.S.C.A. § 1367(c). Since summary judgment has not been granted on all federal claims because a trialworthy issue remains as to Elliott's § 1983 claim in Count I, the defendant's request is denied.

<u>Conclusion</u>

For the foregoing reasons, the Transcor defendants' motion for summary judgment (document no. 60) is granted as to defendant Junious Hamm, Jr. in Count I and as to all Transcor defendants in Counts II, III, IV, X, and XI. The motion is otherwise denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 25, 2001

cc:  James W. Craig, Esquire
     Donald E. Gardner, Esquire
     Michael D. Ramsdell, Esquire
     Charles K. Grant, Esquire

13