**Michael SEABROOK, Plaintiff,**

v.

**ONONDAGA BUREAU OF MEDICAL ECONOMICS, INC., Defendant.**

No. 88–CV–546.

United States District Court, N.D. New York.

Jan. 31, 1989.

UAW–GM Legal Services Plan, UAW–Chrysler Legal Services Plan, Syracuse, N.Y., for plaintiff; Clifford Forstadt, of counsel.

Lombardi Devorsetz Stinziano & Smith, Syracuse, N.Y. for defendant; Bruce E. Wood, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Background

On approximately May 20, 1987, plaintiff, Michael Seabrook, received a letter from defendant, Onondaga Bureau of Medical Economics, Inc. ("OMBE"), a collection agency for physicians. That letter dated May 18, 1987, stated:

> You have ignored our demands for payment of this account. If legal action is started by our client and judgment is obtained against you, *10%* of your gross weekly wages can be deducted in satisfaction of the judgment. PLEASE DO NOT MAKE THIS ACTION NECESSARY. PAY THIS CLAIM DIRECTLY TO THIS OFFICE WITHIN FIVE (5) DAYS.

Plaintiff's Exhibit 1 (emphasis in original). The purpose of that letter was to collect a debt of $198.00, which plaintiff owed Dr. Scheider. That debt has been outstanding from 1985 to the present time.

In an effort to collect that debt, OMBE claims that it sent plaintiff two other letters demanding payment of the debt before

the May 18, 1987, letter which is the subject of this litigation.[1] Plaintiff avers, however, that the May 18, 1987, letter was his only communication from OMBE either prior to or since May 20, 1987. Seabrook Affidavit (12/22/88) at par. 4.

On May 17, 1988, plaintiff commenced the present action seeking statutory damages for OMBE's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"). Specifically plaintiff claims that the May 18*th* letter did not give him the notice required by the FDCPA and that it threatened legal action in violation of the Act. OMBE is now moving for summary judgment on several grounds. First, OMBE claims that the letter fully complied with the FDCPA. Second, OMBE contends that summary judgment is proper because plaintiff's action is time barred. Third, OMBE asserts that even if the court finds that it did somehow violate the FDCPA, it should not be held liable because such noncompliance was unintentional and resulted from bona fide error. Plaintiff has cross-moved for summary judgment basically claiming that the letter violated the FDCPA.

*Discussion*

I. Statute of Limitations

█ Plaintiff is claiming that OMBE violated § 1692e(5); § 1692e(11) and § 1692g of the FDCPA. Section 1692e(5) states that it is a violation of the FDCPA to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5) (West 1982). The latter two sections pertain to the content of communications from debt collectors and essentially require that debtors be given certain notification in those communications. With respect to the alleged violations of §§ 1692e(5) and 1692e(11), OMBE is contending that the violations of those sections are governed by the one year statute of limitations set forth in § 1692k(d).[2] Section 1692k(d) does not specifically define the date on which the violation occurs; nor did research reveal any published decisions construing this statute of limitations. There are arguably two possibilities. The violation could occur on the date the letter was sent; or, more likely, the violation could occur on the date the debtor received the communication which supposedly violated the FDCPA. Here, whichever date the violation is deemed to have occurred—May 18*th* when the letter was sent or May 20*th* when plaintiff received it—plaintiff's action was timely filed in that he filed the complaint on May 17, 1988. Thus, plaintiff's action for alleged violations of §§ 1692e(5) and (11) is not time barred by § 1692k(d).

OMBE also argues that plaintiff's claimed violation of § 1692g is governed by the one year statute of limitations just discussed, as well as by § 1692g itself, which provides:

(a) *Within five days after the initial communication* with a consumer in connection with the collection of any debt, *a debt collector shall, unless* the following

---

1. It is interesting to note that in the affidavit of Bridget Farrell, OMBE's lawyer, she avers that "the initial communication to plaintiff occurred on May 8, 1987...." Farrell Affidavit (11/17/88) at par. 3(A). There is no documentary proof before the court to support that statement, however. In fact, the individual, other than plaintiff, who would seem to be in the best position to know when and how many letters were sent to plaintiff is Gerald Hoffman, OMBE's Executive Director. And although he too submitted an affidavit in support of defendant's motion, his affidavit pertains to OMBE's "custom and practice" in approximately May, 1987, regarding notification of debt collection. In particular, he avers that the letter which is the subject of this action would have been sent in accordance with OMBE's custom and practice at the relevant time as a *second* notification for

debt collection. Hoffman Affidavit (11/17/88) at par. 2. That statement is not consistent though with the statement in OMBE's Memorandum of Law that the May 18, 1987, letter was its "third communication demanding payment of the debt." Defendant's Memorandum of Law at p. 1–2.

2. 15 U.S.C. § 1692k(d) states:
   An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.
15 U.S.C. § 1692k(d) (West 1982).

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies *the debt collector in writing within* the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)–(5) (West 1982) (emphasis added). Relying upon that language, OMBE asserts that because the initial communication was May 8, 1987, the violation would have occurred May 13, 1987; and because plaintiff did not file this action until May 17, 1987, plaintiff's cause of action based upon an alleged violation of § 1692g is time barred.

Plaintiff did not address this argument. The court assumes, however, that plaintiff's position is that the May 18*th* letter was the "initial communication," and thus this action was timely commenced. As will be discussed herein, because there is a genuine issue of material fact concerning whether the May 18*th* letter was an initial communication for purposes of § 1692g, OMBE's motion for summary judgment based on the statute of limitations for this claimed violation is denied.

## II. Claimed Violation of § 1692e(5)

■ Section 1692e(5) states, in relevant part:

[T]he following conduct is a violation of this section: ...

(5) The threat to take any action that cannot legally be taken *or* that is not intended to be taken.

15 U.S.C. § 1692e(5) (West 1982) (emphasis added). It is OMBE's position that because garnishment is a lawful remedy under § 5231 of the New York Civil Practice Law and Rules, and because OMBE *intended to* recommend such action to its client, Dr. Scheider, it did not violate § 1692e(5) as a matter of law; thus summary judgment is proper on this issue. Plaintiff contends, on the other hand, that OMBE could not legally take the garnishment action referred to in the May 18*th* letter, and hence that letter amounts to a *per se* violation of the FDCPA. Therefore, plaintiff asserts that summary judgment should be granted in his favor on this issue.

In support of its position OMBE quoted a portion of section 5231(b), which states, in part:

Where a judgment debtor is receiving or will receive earnings from any person, an income execution for installments therefrom of not more than ten percent thereof may be issued and delivered to the sheriff of the county in which the judgment debtor resides or, where the judgment debtor is a non-resident, the county in which he is employed; ....

N.Y.Civ.Prac. Law and R. § 5231(b) (McKinney Supp.1988). OMBE improperly relies upon the quoted language, however, because that statute as recited by OMBE, did not become effective until August 7, 1987—*after* the letter at issue was sent to plaintiff. *See,* N.Y.Civ.Prac. Law & R. 5231 (McKinney Supp.1988).

In addition and more importantly, on March 27, 1987, in *Follette v. Cooper,* 658 F.Supp. 492 (N.D.N.Y.1987), Judge Munson declared that plaintiffs' due process rights therein were violated by the service of income executions upon judgment debtors without notice of the exemptions from garnishment under federal law and without notice of the procedures for challenging income executions provided by New York's Civil Practice Law and Rules.

On April 24, 1987, Judge Munson issued a second decision in *Follette, inter alia,* clarifying the notice requirements which must be given to debtors in income executions. *See, Follette v. Cooper,* 658 F.Supp. 514 (N.D.N.Y.1987) (*"Follette II"*). In defining the notice requirements for income executions in New York State, Judge Munson also delineated the amount which could legally be garnished in the event a judgment was obtained. Specifically, after April 24, 1987, a debt collector would only be entitled to garnish a debtor's gross income in accordance with the following limitations:

A. An income execution for installments from a judgment debtor's *gross income* cannot exceed ten percent (10%) of the judgment debtor's *gross income.*

B. If a judgment debtor's *weekly disposable earnings* are less than thirty (30) times the current federal minimum wage ($3.35 an hour), or $100.50, no deduction can be made under this income execution.

C. A judgment debtor's *weekly disposable earnings* cannot be reduced below the amount arrived at by multiplying thirty (30) times the current federal minimum wage ($3.35 an hour), or $100.50, under this income execution.

D. If deductions are being made from a judgment debtor's gross income under any orders for alimony, support or maintenance for family members or former spouses, and those deductions equal or exceed twenty-five percent (25%) of the judgment debtor's *disposable earnings,* no deduction can be made under this income execution.

E. If deductions are being made from a judgment debtor's gross income under any orders for alimony, support or maintenance for family members or former spouses, and those deductions are less than twenty-five percent (25%) of the judgment debtor's *disposable earnings,* deductions may be made under the income execution. However, the amount arrived at by adding the deductions made under this execution to the deductions made under any orders for alimony, support or maintenance for family members or former spouses cannot exceed twenty-five percent (25%) of the judgment debtor's *disposable earnings.*

*NOTE:* Nothing in this notice limits the proportion or amount which may be deducted under any order for alimony, support or maintenance for family members or former spouses.

*Follette II,* 658 F.Supp. at 518–19.[3]

In accordance with § 5231, as modified by the *Follette* decisions, OMBE would only have been legally entitled to what it suggested in the letter *if* plaintiff was earning more than $100.50 in weekly disposable earnings and if the other limitations on garnishment summarized in *Follette II* did not apply. At oral argument, defense counsel asserted that the May 18*th* letter did not violate § 1692e(5) because "in all likelihood" the plaintiff was earning over $85.00 per week. That statement seems highly improbable in light of plaintiff's averments that he has been disabled since October 17, 1986, and thus unable to work since that date. Seabrook Affidavit (12/22/88) at par. 5. Furthermore, OMBE did not proffer any evidence to establish that it knew the amount of plaintiff's weekly disposable earnings, so that it would have been justified in threatening to garnish plaintiff's gross weekly wages in an amount up to 10%. Consequently, because the May 18, 1988, letter did not accurately reflect the state of New York garnishment law at the time it was sent, the court finds that that letter violated § 1692e(5) in that OMBE was not legally entitled to satisfy any judgment that might have been obtained against plaintiff by executing on his income in an amount up to 10% of his gross weekly wages.

In the affidavit submitted by OMBE's counsel in support of this motion, she enumerates several "evidentiary facts" which she claims support the motion, including

---

**3.** Those requirements were subsequently adopted by the New York State Legislature and are codified at New York Civ.Prac. Law & R. § 5231 (McKinney Supp.1988). That legislation became effective August 7, 1987.

the fact that, "the defendant intended to take this action against the plaintiff to collect the debt." Farrell Affidavit at par. 3(B). Thus, it is undisputed that OMBE intended to take the legal action threatened in the letter. As just discussed, though, OMBE nevertheless violated the first part of § 1692e(5) in that it threatened to take action which it could not legally take.

In sum, OMBE's motion for summary judgment on this issue is denied. Plaintiff's cross-motion is granted, however, because the threat to take legal action which could not legally be taken violates § 1692e(5) and such violation is a *per se* violation of the FDCPA. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir.1985) ("[S]ubsection (5) requires proof of fact which amounts to a *per se* violation of section 1692(e)."); *Riveria v. Mab Collections, Inc.*, 682 F.Supp. 174, 178 (W.D.N.Y.1988) ("The court need only decide whether the alleged threatened actions could not legally be taken or were not intended to be taken.")

### III.  Claimed Violation of § 1692e(11)

It is a violation of the FDCPA to:

[f]ail[] to disclose clearly in *all communications made to collect a debt or to obtain information about a consumer,* that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

15 U.S.C. § 1692e(11) (West 1982) (emphasis added). Although not expressly articulated, OMBE has two arguments with respect to its claimed violation of this statute. First, OMBE contends that it did comply with the requirements of § 1692e(11) in that the letter "clearly indicates that the debt collector is attempting to collect a debt for Dr. Scheider," and because the letter states the name of the physician to which plaintiff owes the debt and the amount of the debt. Defendant's Memorandum of Law at p. 3. Second, OMBE is apparently contending that even if it did not comply with § 1692e(11) in the May 18th letter, it was exempt from doing so because there were prior communications which were in compliance, as is evidenced

by the language therein, "you have ignored our demands for payment of this account." OMBE apparently believes the May 18th letter was simply a follow-up notice and as such it did not constitute a "communication" for purposes of § 1692e(11).

█ Turning first to OMBE's contention that it complied with § 1692e(11), there are two requirements of that section. The communication must clearly disclose (1) "that the debt collector is attempting to collect a debt," and (2) "that any information obtained will be used for that purpose." Understandably, OMBE did not address its compliance, or lack thereof, with the second disclosure requirement of § 1692e(11). Nowhere in the May 18th letter does it expressly state that "any information obtained will be used for that purpose;" nor is there any language therein even suggestive of that statutory requirement. Therefore, there can be no dispute that OMBE failed to comply with all of the disclosure requirements of § 1692e(11). Although the letter here did not request any information, the failure to include the disclosure language is nonetheless a violation of that section. *See, Case v. Credit Bureau of Georgia*, 82–1107, slip op. at p. 4–5 (D.Ore. Nov. 11, 1982) ("Although the form letter does not request any information, § 1692e(11) explicitly requires disclosure that any information obtained will be used for debt collection purposes in all communications made to collect a debt. The failure of defendant's form letter to make this disclosure is a violation of section 1692e(11).")

█ Having failed on its compliance argument, OMBE is left with its assertion that it did not have to fully comply with § 1692e(11) because there had been prior communications which were in compliance. In support of that contention, OMBE relies upon *Pressley v. Capital Credit & Collection Service, Inc.*, 760 F.2d 922, 925 (9th Cir.1985), where the Ninth Circuit held that a "follow up notice" was not a communication within the meaning of § 1692e(11), and consequently the debt collector therein was not required to make the disclosure required by the statute. *Id.* at 925. OMBE

also relies upon a decision in this Circuit by Judge Connor, *Richardson v. Baker*, 663 F.Supp. 651 (S.D.N.Y.1987). *Richardson* is not, however, applicable to the present case because the debt collector allegedly violated § 1692g(a), which required certain validation language, but only in the "initial communication," not in all communications, which is the requirement of § 1692e(11).

As plaintiff correctly points out, the court's holding in *Pressley* has *not* been followed by other courts. *See e.g., Hulshizer v. Global Credit Services, Inc.*, 728 F.2d 1037, 1038 (8th Cir.1984); *Case v. Credit Bureau Inc. of Georgia, supra; Beaulieu v. National Educational Corporation*, CV 79–L–271, slip op. (D.Neb. Jan. 22, 1981); *Cox v. Credit Bureau Systems, Inc.*, 83–1082–P, slip op. (W.D. Kentucky Apr. 11, 1984). The courts in those cases refused to ignore the clear and unambiguous language of § 1692e(11) that "all communications" must contain the disclosure requirements of that statute. For example, in *Cox*, the court persuasively reasoned:

> It is not this court's role to question the wisdom of Congress; however, the court will note that Congress could reasonably have concluded that clear disclosures in every communication were necessary to prevent unfair practices and to avoid casebycase [sic] inquiries into whether a debtor reasonably knew the intent and consequences of the communication.

*Id.* at 3. Given the plain and unambiguous language of the statute, this court follows the majority of courts which have addressed this issue and concludes that debt collectors, such as OMBE, are required to clearly make the statutory disclosures in *every* communication to a debtor. Thus, OMBE's motion for summary judgment on this issue is denied, and plaintiff's cross-motion is granted because OMBE violated § 1692e(11) of the FDCPA by failing to make the required disclosures.

## IV. Claimed Violation of § 1692g

The last provision of the FDCPA which plaintiff claims OMBE violated by sending the May 18*th* letter is § 1692g. It is undisputed that the May 18*th* letter did not contain the notice requirements of that statute. OMBE did not address the merits of this alleged violation, but simply asserted, as previously discussed, that it is barred by the statute of limitations. Plaintiff contends that the May 18*th* letter was the initial communication, and thus OMBE clearly violated the statute. Therefore, plaintiff contends that it is also entitled to summary judgment on this issue. However, because there is a genuine issue of material fact—whether the subject letter was the initial communication—neither party is entitled to summary judgment on this claim. *Accord, Richardson v. Baker, supra*, 663 F.Supp. at 657 ("Because the parties dispute whether plaintiffs received the initial notice, it is impossible, at this stage, to determine whether defendants have violated section 1692g(b).") Therefore, OMBE's motion and plaintiff's cross-motion are both denied with respect to the alleged violation of § 1692g.

## V. "Bona Fide Error" Defense

■ Perhaps anticipating some liability, OMBE also contends that even if it violated the FDCPA, "any such violation was not intentional and resulted from a bona fide error." Defendant's Memorandum of Law at p. 11. That affirmative defense is codified at 15 U.S.C. § 1692k(c), which states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c) (West 1982). As plaintiff correctly contends, even if OMBE did not intentionally violate the FDCPA, it cannot rely upon § 1692k(c) because it has not come forth with any proof tending to show that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See e.g., Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 874 (D.N.D.1981) (Rejecting collector's bona fide error defense where, although the collector showed, by a prepon-

derance of the evidence, that its conduct was unintentional, it did not show that the acts complained of resulted from bona fide error.) For example, in *Carrigan v. Central Adjustment Bureau, Inc.*, 494 F.Supp. 824 (N.D.Ga.1980), a case relied upon by plaintiff, the court held that because the defendant collector did not come forth with any evidence that it maintained proper procedures to avoid the errors complained of, the "bona fide error" defense was not available to the defendant. *Id.* at 827.

In the present case, although OMBE did submit a letter which it claims would have been sent to plaintiff as its "custom and practice ... on or about May, 18, 1987," OMBE apparently is not relying upon that letter to show that it maintained procedures "reasonably adapted to avoid" the errors complained of here, as it did not even mention such letter in its discussion of the bona fide error defense. *See* Defendant's Memorandum of Law at p. 11–12 and Ex. 1. Moreover, even if OMBE were relying upon that letter to show that it maintained proper procedures to avoid the errors complained of herein, such reliance would be misplaced because that letter clearly violated the notice requirements discussed herein of §§ 1692g and 1692e(11). Therefore, OMBE is not entitled to summary judgment on the "bona fide error" defense, and its motion is also denied in that respect.

Accordingly, it is hereby

ORDERED, that:

(1) defendant's motion for summary judgment is denied;

(2) plaintiff's cross-motion for summary judgment is granted with respect to the causes of action based upon 15 U.S.C. §§ 1692e(5) and 1692e(11); but it is denied with respect to the cause of action based upon 15 U.S.C. § 1692g as there is a genuine issue of material fact with respect to that cause of action.