**Susanne A. ROSADO, Plaintiff**

v.

**Septtimous TAYLOR, Defendant**

No. 302–CV–876 RM.

United States District Court,
N.D. Indiana,
South Bend Division.

June 22, 2004.

Clifford W. Shepard, Attorney at Law, Indianapolis, IN, Michael P. McIlree, McIlree and McIlree, Valparaiso, IN, for Plaintiff.

Matthew S. Effland, Todd J. Kaiser, Ogletree Deakins Nash Smoak & Stewart PC, Indianapolis, IN, for Defendant.

## MEMORANDUM AND ORDER

MILLER, Chief Judge.

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692*o*, protects debtors from certain debt collection practices. Susanne Rosado filed a complaint charging attorney Septtimous Taylor with violating several provisions of the FDCPA. Mr. Taylor moved for summary judgment, raising both procedural and substantive arguments. In Ms. Rosado's response, she asked for summary judgment in her favor, though she filed no formal motion. For the reasons stated below, the court grants Mr. Taylor summary judgment in part, denies him summary judgment in part, grants Ms. Rosado summary judgment in part, and denies her summary judgment in part.

### I. FACTS

The facts recited below are largely undisputed. To the extent there is a dispute about a fact, in light of the cross motions for summary judgment, the court provides it as both Mr. Taylor and Ms. Rosado claim it to be.[1]

---

1. Mr. Taylor objects to the facts Ms. Rosado presents in her response. He complains, in his reply, that they are argumentative, conclusory, and in the wrong form (i.e., they violate Local Rule 56.1). To the extent that Ms. Rosado's facts are argumentative or conclusory, the court ignores them. As for the form, the court finds it sufficient. Though, contrary to the Local Rules, she entitled her fact section "Statement of Material Facts" rather than "Statement of Genuine Issues," the section highlights the facts about which she disagrees with Mr. Taylor and it often includes citations to the record. Thus, her fact section serves its function, and the errant title is nothing more than a detail. *See generally* Local Rule 1.1(e) ("In individual cases the court, upon its own motion or the motion of any party, may suspend or modify any of these rules if the interests of justice so require.").

Ms. Rosado borrowed $30,000 from Trinity Mortgage Company of Dallas to purchase a house in Hannah, Indiana. Trinity transferred the mortgage to Calumet Securities, which sold it to Firstar Home Mortgage. Two contracts established the parameters of the transaction: a mortgage and a borrower's note. The borrower's note contains Ms. Rosado's promise to repay the $30,000 along with related terms and conditions. The mortgage made the house in Hannah security for the loan. The note obligated Ms. Rosado to make a certain monthly payment each month for 30 years, and established that failure to make a payment would result in default. The mortgage proclaims that, upon default, the note and mortgage holder can accelerate the debt (i.e., deem the whole amount of the loan to be due), foreclose on the house, and sell the same at public auction, provided it sends Ms. Rosado written notification and affords her 30 days to cure the default.

Ms. Rosado defaulted. Firstar sent Ms. Rosado a written notice warning her that the debt would be accelerated if she didn't pay the overdue amount in 30 days, and the bank would foreclose and sell the house at a public auction. She didn't respond to that letter or the two that followed, each of which informed her that Firstar was initiating foreclosure proceedings.

Firstar hired attorney Septtimous Taylor to prosecute the foreclosure. On December 3 or 4, 2001—the parties disagree about which day—Mr. Taylor packaged a foreclosure complaint with a summons and a document entitled, "Notice Under the Fair Debt Collection Practices Act," and shipped them all to the LaPorte Superior Court for filing and service on Ms. Rosado. The LaPorte Superior Court filed the documents on December 6. To effect service, the Court sent a copy of the packet to Ms. Rosado via certified mail on December 14.

Ms. Rosado received the packet sometime after that (the record doesn't reflect the exact date of receipt).

The summons informs the recipient—here Ms. Rosado—that she is being sued and that she must meet certain deadlines and follow certain procedures to preserve her rights. Most importantly for today's purposes, it announces, "[y]ou must answer the complaint in writing ... within twenty (20) days, commencing the day after you receive this summons (you have twenty-three (23) days to answer if this summons was received by mail), or judgment will be entered against you for what the plaintiff has demanded."

In form, the foreclosure complaint is a standard state court complaint. It contains three salient points. The first is its statement of the debt. The statement reads, in relevant part:

[Defendant] is in default and is indebted to the Plaintiff.... [Plaintiff] is entitled to judgment against the Defendant, Susanne A. Rosado, for the principal sum of said indebtedness, plus accrued interest though June 1, 2001, plus advances through June 1, 2001, used to pay ad valorem taxes, insurance, special assessments and escrow fees, which sums total THIRTY–ONE THOUSAND EIGHT HUNDRED SIXTY–ONE & 44/100 DOLLARS ($31,861.44), plus interest thereon at the rate of 8.50% per annum until paid in full, along with late penalties thereon at the rate of TWENTY–FOUR & 60/100 DOLLARS ($24.60) per month beginning with June 1, 2001 until date of Complaint, plus advances that are made during the pendency of this action.

Second is the request for attorney's fees, "Plaintiff is entitled to recover court costs and reasonable attorney fees in the amount of $1,500.00." The third material aspect of the complaint is the kind of relief

that it requests: "the Plaintiff respectfully prays and demands that it be adjudged to hold a first, prior and superior lien on said real property [the house in Hannah] in order to secure [judgment on the amount listed in ¶ 5 plus attorney's fees]."

The notice consists of six numbered paragraphs and a one-sentence introduction. The introduction is unimportant. The first numbered paragraph incorporates the debt statement from ¶ 5 of the complaint. Paragraph two explains that the plaintiff in the suit is the creditor. Paragraphs three through five set forth various procedural protection available to Ms. Rosado if she makes certain requests in writing within 30 days. The third paragraph (the most important for today's purposes) announces that "[t]he debt described in the foregoing complaint and evidenced by the copy of the mortgage note attached hereto will be assumed to be valid by Septtimous Taylor, attorney for Plaintiff, unless, within thirty days after receipt of this notice, you dispute, in writing, the validity of the debt or some portion thereof." Finally, the sixth paragraph proclaims that the "attached correspondence is for the purpose of collecting a debt and any information obtained will be used for that purpose."

Firstar eventually moved for summary judgment in the foreclosure action. Ms. Rosado contested the motion, but the court entered summary judgment for the bank, foreclosing the mortgage, ordering the sheriff to sell the house, and finding that the Bank was entitled to $33,713.66 (including $1,500 in attorney's fees) from the sale of the house. Before the foreclosure sale, Ms. Rosado entered into a new agreement with the bank that refinanced her outstanding debt. As part of this refinancing, Ms. Rosado agreed to add to her monthly payment an amount that would reimburse the bank for the legal fees and costs it incurred in prosecuting the foreclo-

sure. Because of this new deal, Ms. Rosado still resides in the house in Hannah.

Shortly after completing the refinancing agreement, Ms. Rosado filed this suit. Originally filed as a class action (the court denied class certification), the suit alleges that the summons, complaint, and notice drafted by Mr. Taylor violate several provisions of the FDCPA. On its face, the complaint challenges the following: the notice's statement in ¶ 3 that a dispute must be in writing to rebut the presumption that a debt is valid, the array of apparently contradictory time limitations scattered throughout the summons and notice (i.e., the 20 and 23 day deadlines mentioned in the summons and the 30 day deadlines mentioned in the notice), and the foreclosure complaint's request for $1500 in attorneys fees. Briefing on this motion has made it clear that Ms. Rosado meant for her complaint to challenge, as well, the sufficiency of the debt statement in the foreclosure complaint and the notice.

Mr. Taylor seeks summary judgment, challenging the timeliness of Ms. Rosado's suit, the FDCPA's applicability, and whether, assuming the Act applies, he violated it. Ms. Rosado filed a response, joining the battle on nearly every point raised by Mr. Taylor and asking for summary judgment in her favor. Mr. Taylor filed a reply, objecting to the court entering summary judgment in Ms. Rosado's favor.

## II. STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In deciding whether a genuine issue of material fact exists, the court

construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. *Ritchie v. Glidden Company*, 242 F.3d 713, 720 (7th Cir.2001). "[N]either the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to material facts is sufficient to defeat such a [summary judgment] motion." *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 738 (7th Cir.1999) (internal citations and quotations omitted).

### III. Analysis

#### A.

■ Ms. Rosado informally moves for summary judgment in her response brief. Stripping her argument to its core, she maintains that Mr. Taylor is on notice that summary judgment against him is a possibility, and that he has had ample opportunity to address the issues before the court. Thus, she concludes, if there are no genuine issues of material fact, and the law is on her side, summary judgment is appropriate.

Mr. Taylor seeks "an additional opportunity to respond prior to an entry of summary judgment being made against him." He devotes the bulk of his argument to distinguishing this case from *Hunger v. Leininger*, 15 F.3d 664 (7th Cir.1994), the only case Ms. Rosado cites in support of her position. Mr. Taylor acknowledges that the *Hunger* court granted summary

judgment to the nonmovant without affording the movant additional briefing, but says the court did so only because of the case's unique procedural posture: it was a review of an administrative hearing. Mr. Taylor says that without this special circumstance, "a trial court may not *sua sponte* enter summary judgment against a party without providing notice to the party of its intent to do so, and giving that party an opportunity to respond."

■ The court disagrees with Mr. Taylor. A court can grant summary judgment in favor of a non-movant in a case that does not involve administrative appeals or close equivalents as long as the court provided the losing party with notice and a chance to come forward with evidence in its favor. In *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 740 (7th Cir.2002), the court of appeals affirmed a district court's grant of summary judgment on facts akin to those in play here. Mr. Jones had moved for summary judgment, but the district court had granted it in favor of the railroad. *Id.* The district court had agreed with Mr. Jones that there were no genuine issues of material fact, but it had disagreed about the application of the law to the undisputed facts. *Id.* The court of appeals reasoned that Mr. Jones was on notice that the district court was considering summary judgment because he had moved for it. *Id.* And in moving for summary judgment, he had had the opportunity to detail all of the arguments and marshal all of the evidence in support of his position.[2] *Id.*

■ *Hunger v. Leininger* is not to the contrary. *Hunger* approvingly cites the proposition, drawn from *Market St. Associates Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir.1991), that a party "moving

---

**2.** There is a difference between the cases: Mr. Taylor objected to the entry of summary judgment in his reply, whereas Mr. Jones did not. This difference does not dictate a different outcome in this case. The *Jones* court pointed to Mr. Jones's failure to object as one point among several in support of its position; it was not a linchpin. 302 F.3d at 740.

for summary judgment [does not] automatically surrender [his] right to a trial should the judge disagree that [he] [was] entitled to judgment as a matter of law." *Hunger v. Leininger,* 15 F.3d at 669. Stated differently, a court cannot enter summary judgment against a movant if it disagrees with his contention that there are no genuine issues of material fact. *See Goldstein v. Fidelity and Guaranty Insurance Underwriters, Inc.,* 86 F.3d 749, 751 (7th Cir. 1996) (drawing this conclusion in relation to the principle as stated in *Market St. Associates Ltd. P'ship* ). "It does not mean that if the district court agreed with his characterization of the facts, [the movant] can wiggle out of his concession and compel a reversal [by the court of appeals] of a judgment against him based on questions of law." *Id.* Weighing evidence at the summary judgment stage is forbidden, *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003), but drawing legal conclusions from undisputed facts after an issue has been fully briefed is the very stuff of summary judgment. Thus, the court has some power to enter summary judgment for Ms. Rosado even though she did not file a motion for summary judgment.

### B.

█ The parties' most fundamental dispute is whether the FDCPA governs Mr. Taylor's conduct. Mr. Taylor posits that he is not a debt collector, as one must be to be subject to the FDCPA, but an enforcer of security interests. Ms. Rosado sees Mr. Taylor as a debt collector. They are both right and both wrong. With regard to the summons and foreclosure complaint, Mr. Taylor wasn't acting as a debt collector. As to the FDCPA notice, Mr. Taylor was playing the part of a FDCPA-bound debt collector.

█ Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices.[3] *See, e.g.,* 15 U.S.C. § 1692a(6) (distinguishing debt collection from security enforcement); § 1692c (regulating communication "in connection with the collection of any debt"); § 1692d (prohibiting abusive behavior "in connection with the collection of a debt"); § 1692e (outlawing false or misleading representation "in connection with the collection of any debt"); § 1692f (forbidding the use of unfair means "to collect or attempt to collect any debt"). The cases addressing this distinction normally do so in the context of personal property. *See, e.g., Nadalin v. Automobile Recovery Bureau,* 169 F.3d 1084, 1085 (7th Cir. 1999). No different rule applies in cases involving real property; a smaller number of cases hold that a mortgage foreclosure is not a debt collection activity. *Bergs v. Hoover, Bax & Slovacek, L.L.P.,* 2003 WL 22255679 at *3–*6 (N.D.Tex. Sept.24, 2003); *Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1203–1204 (D.Or.2002); *Heinemann v. Jim Walter Homes, Inc.,* 47 F.Supp.2d 716, 722 (N.D.W.Va.1998). These decisions are eminently sensible, since "[a] mortgage is used to grant a security interest in real property." *Black's Law Dictionary* 1357 (6th ed.1991).

The most frequently cited case attributes the different treatment of security interests and debts to the target's ability to comply with the request made of her. *Jordan v. Kent Recovery Serv., Inc.,* 731 F.Supp. 652, 656 (D.Del.1990). One receiving debt collection letters may agonize that she cannot comply with them, hence she needs the Act's protection. One asked to comply with a security interest enforce-

---

**3.** There is an exception to this rule: § 1692f(6) applies to security enforcement actions. Because Ms. Rosado does not invoke this provision, the court ignores this exception throughout.

ment request, on the other hand, has the security that she can return (unless she has been a malefactor). *Id.* This distinction may wane in the context of real property, since turning over one's house is unlikely to ever be easy. Regardless, the law is rather clear that enforcing a security interest is not debt collection.

Mr. Taylor argues that in filing for foreclosure, he was merely enforcing a security interest: "neither Taylor nor the bank sought a deficiency judgment against [Ms. Rosado] as part of the foreclosure suit."

■ Ms. Rosado responds, first, that Mr. Taylor sought more than judgment against the property in the form of foreclosure: he "demand[ed] what is unquestionably an *in personam* judgment against Ms. Rosado" (though she never specifies that *in personam* judgment). She also notes that Mr. Taylor asked for court costs and attorney's fees, and cites various cases said to hold that attorneys filing foreclosure actions are debt collectors under the FDCPA—*Levin v. Kluever & Platt*, 2003 WL 22757763 (N.D.Ill. Nov.19, 2003); *Blum v. Fisher & Fisher*, 961 F.Supp. 1218 (N.D.Ill.1997); and *Wehrheim v. Secrest*, 2002 WL 31427515 (S.D.Ind. Oct.9, 2002).

This case would have been more straightforward had Mr. Taylor only sent Ms. Rosado either the summons and complaint or the FDCPA notice. Sending both muddied the waters. The summons and complaint relate to the foreclosure which, as the enforcement of a security interest, is, by itself, untouched by the FDCPA. *See, e.g., Bergs v. Hoover, Bax & Slovacek, L.L.P.*, 2003 WL 22255679 at *3–*6. The notice, on the other hand, is a classic example of the sort of communication governed by the FDCPA. *Spearman*

*v. Tom Wood Pontiac–GMC, Inc.*, 2002 WL 31854892 at *2–*5 (S.D.Ind. Nov.4, 2002) (finding an almost identical notice to be a communication under the FDCPA). *See also* § 1692a (defining "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium").

In *Bergs v. Hoover, Bax*, the attorney sent an FDCPA notice along with a notice of foreclosure. 2003 WL 22255679 at *5. The court considered the FDCPA notice an action "in pursuit of the foreclosure" and so decided that it was outside of the Act. *Id.* In essence, the court proceeded as if the notice of foreclosure subsumed the FDCPA notice. This court reads the law differently.

The FDCPA doesn't speak to the summons and complaint, but it controls the FDCPA notice. The FDCPA notice is not a part of the foreclosure action—the foreclosure action would not falter for failure to send Ms. Rosado an FDCPA notice, and Mr. Taylor says the FDCPA notice was unnecessary. Thus, the court cannot find that the notice was a part of the foreclosure action. Nor, however, can the court find that the notice transformed the summons and complaint into a debt collection activity. The summons and complaint were just as much elements of the foreclosure action as they would have been had they been sent separate from it,[4] and the court can find no precedent for such a transformation. So the court treats these sets of documents separately: the FDCPA notice is subject to the Act; the summons and complaint are not.

■ Ms. Rosado's arguments do not convince the court that the Act encompasses the summons and complaint as well.

---

**4.** The FDCPA notice refers to "the attached correspondence" as being "for the purpose of collecting a debt," notice at ¶ 6, but the notice cannot expand the scope of the FDCPA, caus-

ing it to apply to things to which it otherwise would not apply. With the exception noted earlier, the FDCPA does not apply to security enforcement actions.

Her argument about Mr. Taylor's request for an "unquestionably *in personam* judgment" is unpersuasive because she never specifies this request. *Hojnacki v. Klein–Acosta*, 285 F.3d 544, 549 (7th Cir.2002) (noting that undeveloped arguments are waived). The complaint's solicitation of attorney's fees does not bring it within the Act's orbit. The term debt collector "does not include... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained [5] by such person." 15 U.S.C. § 1692a(6)(F)(iii). Even if the request for attorney's fees is seen as an attempt to collect a debt owed to another, the efforts don't concern a debt that was in default when Mr. Taylor began collecting it. Here, the debt is the attorney's fees. Were the underlying action one for a monetary judgment against Ms. Rosado, the effort to collect the attorney's fees would "concern" a debt that was in default (the debt underlying the action for a monetary judgment). But the underlying action here is for foreclosure, not for a monetary judgment. Thus, to say that the collection of the attorney's fees concerns a debt that was in default, one has to claim that the attorney's fees relate to the foreclosure, which in turn relates to the covered mortgage debt (because the foreclosure action would not have been brought had Ms. Rosado not defaulted on her mortgage). This reasoning stretches the definition of "con-

cern" a step too far. *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir.1998) (declining to find that a collection effort regarding a forbearance agreement, which came about as a result of a defaulted mortgage, "concerned" the defaulted mortgage).[6] Thus, the request for attorney's fees does not fall under the FDCPA.

Lastly, *Levin*, *Blum*, and *Wehrheim* don't establish that the FDCPA applies to foreclosure actions. Each assumes that a lawyer may be held responsible for information in a foreclosure complaint, *Wehrheim v. Secrest*, 2002 WL 31427515 at *3–*4 (S.D.Ind. Oct.9, 2002); *Levin v. Kluever & Platt*, 2003 WL 22757763 at *2–*3 (N.D.Ill. Nov.19, 2003); and *Blum v. Fisher & Fisher*, 961 F.Supp. 1218, 1220–1221–1229 (N.D.Ill.1997), but none acknowledges that the FDCPA does not govern security enforcement actions.

The FDCPA applies to the FDCPA notice, but not to the summons and complaint.

## C.

■■ Mr. Taylor contends that the FDCPA's statute of limitations cuts off Ms. Rosado's ability to recover. The FDCPA contains a one-year statute of limitations. 15 U.S.C. § 1692k ("An action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs."). Courts have divided over how

---

**5.** Obtaining a debt does not require purchase or ownership of the debt. *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir.1998) (referring a mortgage servicing company as one who has "obtained" a debt). Mr. Taylor is in essentially the same position as the mortgage servicing company in *Bailey*-he seeks to collect, for another, a payment that is not overdue. *Id.*

**6.** There are sound pragmatic reasons for this conclusion. Drawing a bright line around the

term "concern" gives individuals a clear map for conforming their conduct to the dictates of the law. Also, consonant with the stated purpose of the security enforcement exception, a request to take attorney's fees out of the proceeds of a foreclosure sale does not cause anguish because the shame of noncompliance is not foisted onto the debtor. Foreclosure Complaint at 4, 6, attached as Exhibit B to the Deposition of Septtimous Taylor.

to determine the "date on which the violation occurs" in the context of mailings. Most have pegged this date as the date on which the piece of mail was sent, *e.g., Mattson v. U.S. West Communications,* 967 F.2d 259 (8th Cir.1992); *Friedman v. Anvan Corp.,* 1998 WL 559779 (N.D.Ill. Aug.28, 1998) (collecting cases), while a much smaller number have expressed a preference for the date on which the debtor received the mailed item, *e.g., Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81, 83 (N.D.N.Y. 1989). The Seventh Circuit Court of Appeals has noted the issue without deciding it. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.1997).

*Mattson v. U.S. West* is the seminal case on the date-of-mailing side. The *Mattson* court thought the date of mailing matters because 1) Congress designed the FDCPA to control the conduct of debt collectors, which is complete when the debt collector drops the letter in the mail; and 2) the date of mailing is easily ascertained and therefore provides a useful starting point from which to measure. 967 F.2d at 261. *Seabrook v. Onondaga Bureau,* perhaps the most cited case from the opposing view, didn't actually decide the issue or provide any reasoning for its position. 705 F.Supp. at 83. It simply declared that it was "more likely" that the statute would start to run on the date that the debtor received the communication. *Id.*

The court need not choose between the date-of-mailing rule and the date-of-receipt rule because Ms. Rosado's claim survives under either. To effect service, the state court sent the notice (along with the complaint) via certified mail on December 14, 2001; Ms. Rosado must have received it some time after this date. Since she filed her complaint on December 5, 2002, under the date of receipt rule, her suit falls within the one-year window provided by the statute.

Applying the date-of-mailing rule is more difficult. Mr. Taylor contends that, according to that rule, the triggering date is either December 3 or 4, 2001, the date on which he sent the notice along with the summons and complaint to the state court. (It does not matter for the disposition of this issue whether Mr. Tucker sent the packet on December 3 or 4, but for rhetorical ease, the court refers to the date as December 3.) He reasons that Ms. Rosado's complaint, filed as it was on December 5, 2002, was not timely.

Ms. Rosado calls December 3 an irrational starting point because Mr. Taylor did not send the notice to her that day—he sent it to the court. If Mr. Taylor is right about December 3, she says, a debt collector could send a flagrantly abusive notice to a third party, the third party could sit on it for a year before mailing it to the debtor, and the statute of limitations would prevent the debtor from seeking relief under the FDCPA. Mr. Taylor replies, first, that no lender would be willing to delay its collection activities for a year, and second, that "it is the date of mailing-whether by the debt collector or an agent of the debt collector-that triggers the running of the statute, not the date that it simply leaves the hands of the collector."

The statute of limitations started to run when the state court mailed the notice on December 14. In the run-of-the-mill date of mailing case, the date the letter leaves the debt collector's hands is also the date that letter begins its journey to the debtor. *See, e.g., Mattson v. U.S. West Communications,* 967 F.2d 259. Mr. Taylor sent the notice to the state court, not Ms. Rosado. Mr. Taylor effectively turned the state court into his mailing agent, in a sense (though not as a matter of true agency law), by asking it to forward the notice and complaint on to Ms. Rosado; having procured the subsequent mailing, Mr. Taylor

must be said to have mailed the notice to Ms. Rosado when the state court did: December 14.

This view aligns the case with the run-of-the-mill date of mailing case by starting the clock when all that stands between the debtor and receipt of the letter is the mail service, rather than the mail service and a third party. It also neutralizes the impact of third-party mischief or neglect (however unlikely) on the statute of limitations—a salutary result since there is no reason why a third party should be able to burn up a potential plaintiff's time under the statute of limitations.

Mr. Taylor's second argument against Ms. Rosado's hypothetical captures the essence of the court's decision: the important date is not the date that the letter leaves the debt collector's hands, but the date that it is mailed to the debtor, whether by the debt collector or his agent. So, because Mr. Taylor mailed Ms. Rosado the notice on December 14, 2001, and she filed her suit on December 5, 2002, the statute of limitations is not a bar.

### D.

The FDCPA contains a number of specific protections for debtors, including an assurance that the debt collector will include certain information in its early communications with the debtor to allow the debtor to challenge the validity of the debt in a meaningful manner. 15 U.S.C. § 1692g(a)-(a)(5). One required bit of information is "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Mr. Taylor included such a statement, but the parties disagree about the importance of language that he appended to it: Mr. Taylor added the caveat that the debtor must dispute the validity of the debt in writing. Ms.

Rosado says this contravenes the statute's clear language to the detriment of an unsophisticated debtor who might be able to challenge the validity of the debt orally but not in writing. Mr. Taylor sees the writing requirement as implicit in the provision.

Many courts have addressed this issue without consensus. *Compare Graziano v. Harrison,* 950 F.2d 107 (3rd Cir.1991) (holding that subsection (a)(3) includes a writing requirement), *Castillo v. Carter,* 2001 WL 238121at *2–*4 (S.D.Ind. Feb.28, 2001) (same), *and Sturdevant v. Jolas,* 942 F.Supp. 426, 428–429 (W.D.Wis.1996) (same) *with Spearman v. Tom Wood Pontiac–GMC, Inc.,* 2002 WL 31854892 at *6–*8 (S.D.Ind. Nov.4, 2002) (finding that there is no writing requirement in subsection (a)(3)), *Sanchez v. Weiss,* 173 F.Supp.2d 1029, 1031–1034 (N.D.Cal.2001) (same), *and Ong v. American Collections Enterprise, Inc.,* 1999 WL 51816 at *2–*4 (E.D.N.Y. Jan.15, 1999) (same).

The court begins with § 1692g(a)(3)'s statutory context. Section 1692g(a)(4) provides that if a debtor disputes a debt "in writing" the debt collector "will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." Section 1692g(a)(5) requires a debt collector to furnish the debtor with the name and address of the original creditor, if different from the current creditor, "upon the consumer's written request." Section 1692g(b) states that the debt collector must stop debt collection activities temporarily if the debt is disputed in writing under subsection (a)(4). The debt collector may recommence debt collection activities upon mailing a copy of the verification or judgment in the case of a dispute, and upon mailing the name and address of the original creditor in the

case of a request for information about the original creditor's identity. § 1692g(b).

The most influential case sanctioning a writing requirements is *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir.1991), the only appellate case to tackle this problem. *Graziano* concluded that subsection (a)(3) requires every dispute to be in writing because a contrary result would create an incoherent statutory scheme; allowing oral disputes would not produce any tangible benefit for the debtor because it "would [ ] create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts." *Id.* at 112. The court also insisted on a writing because, it reasoned, memorializing the dispute would cap a potential well of conflicts. *Id. Graziano* has influenced many courts to impose a writing requirement. *See, e.g., Castillo v. Carter,* 2001 WL 238121 at *2–*4; *Sturdevant v. Jolas,* 942 F.Supp. at 428–429.

■ Quite a few courts have held that the writing requirement violates the FDCPA. *See, e.g., Spearman v. Tom Wood Pontiac–GMC, Inc.,* 2002 WL 31854892 at *6–*8 (S.D.Ind. Nov.4, 2002); *Sanchez v. Weiss,* 173 F.Supp.2d at 1031–1034; *Ong v. American Collections Enterprise, Inc.,* 1999 WL 51816 at *2–*4. The court finds those decisions more persuasive than *Graziano v. Harrison* and those that agree with *Graziano.* The statute's language is the first stop: "[t]he plain meaning of a statute is conclusive unless literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Balint,* 201 F.3d 928, 932–933 (7th Cir. 2000). If "Congress includes particular language in one section of a statute but

omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion," *Russello v. U.S.,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation and quotation omitted). The text imposes no writing requirement, and neither party argues otherwise.

The remaining inquiry is whether the text should be ignored to avoid an absurd result that would contravene what must have been the intent of the drafters. That the statute provides for both oral and written disputes is not outside the universe of reasonable congressional intentions that might have undergirded the statute.

An oral dispute offers debtors at least two material benefits. Because subsection (a)(3) states that only an undisputed debt may be considered valid, the debt collector would have to find some evidence that the debt is valid to continue debt collection in the face of an oral dispute. *Sanchez v. Weiss,* 173 F.Supp.2d 1029, 1034 (N.D.Cal. 2001). "It is a simple, informal way to provide a red flag to the debt collector without triggering the obligations under §§ 1692g(a)(4), (5), and 1692g(b)." *Id.* Further, as noted in *Ong v. American Collections Enterprise, Inc.,* 1999 WL 51816 at *3 (E.D.N.Y. Jan.15, 1999), oral disputes are not valueless because a debt collector contacted by a third party after an oral dispute must inform that party that the debt is disputed, pursuant to § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed."

Given the potential material benefits of an oral dispute, the court is not convinced that the absence of a writing requirement renders the statutory scheme incoherent.

On this pure question of law, then, the court sides with Ms. Rosado.

### E.

Another of § 1692g's protections is the requirement that the debt collector inform the debtor of "the amount of the debt" in the initial communication or one following no more than five days later. 15 U.S.C. § 1692g(a)(1). Ms. Rosado criticizes the FDCPA notice (and the complaint, but only the criticism of the notice matters given the court's earlier finding on the scope of the FDCPA) for failing to state the amount of the debt "as of the date of the complaint." The notice incorporates paragraph 5 of the complaint which quantifies the debt as of June 1, 2001; the date of the complaint is probably December 3 (or thereabouts), when Mr. Taylor mailed the notice and complaint to the state court for filing and service. Ms. Rosado's position finds some support in the case law, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark*, 214 F.3d 872, 875–876 (7th Cir.2000) ("What they certainly could do was to state the total amount due . . . on the date the dunning letter was sent. We think the statute required this."), though the matter is not free from doubt in the cases, *Jolly v. Shapiro*, 237 F.Supp.2d 888, 892–893 (N.D.Ill. 2002) (arguing that *Miller* does not require the debt collector to state the amount of the debt as of the date the letter was sent, but only as of some date certain). Mr. Taylor did not respond to this argument.

The court declines to enter summary judgment insofar as Ms. Rosado complains about the adequacy of the debt statement in the notice. Mr. Taylor did not raise, in his summary judgment motion, the sufficiency of the statement of debt in the notice, and so did not become aware that this was an issue until Ms. Rosado's response. Though he had the opportunity to answer this argument in his reply, the absence of a summary judgment motion by Ms. Rosado left him with insufficient notice to justify entry of summary judgment against him. As already discussed, a court may enter summary judgment for a non-movant only when the movant had notice and an opportunity to respond. *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 740 (7th Cir.2002). When the issue involved is first raised by the movant, these prerequisites are satisfied. *Id.* When the issue is first raised by the non-movant in response, the movant does not have sufficient notice and an adequate opportunity to respond. The 15–day reply time allowed by the district's rules is just too short in light of the admonition that entering summary judgment in favor of a nonmovant warrants "special caution." *Goldstein v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 86 F.3d 749, 751 (7th Cir.1996) (quotation and citation omitted).

But because the FDCPA does not cover the foreclosure complaint, the court enters summary judgment for Mr. Taylor insofar as Ms. Rosado relies on the complaint's failure to adequately set out the debt.

### F.

The parties also dispute the propriety, under the FDCPA, of Mr. Taylor's request, in the state court complaint, for $1,500 in attorney's fees. Ms. Rosado says the request amounted to a deliberate misrepresentation in violation of 15 U.S.C. §§ 1692d, 1692e(2), (10), and 1692f, because Mr. Taylor wasn't entitled to so robust a fee when he filed the complaint. The court disagrees; as already discussed, the FDCPA does not cover the request for attorney's fees. Mr. Taylor is entitled to summary judgment on this matter.

### G.

In addition to providing a debtor with certain information, a debt

collector must provide the information in such a way that the debtor will understand it. *Marshall–Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Ms. Rosado says she was confused by the summons, complaint, and notice because the summons says she had either 20 or 23 days to file an answer (depending on whether she received the summons in the mail or not), while the notice says she had 30 days to dispute the validity of the debt. Mr. Taylor's summary judgment motion didn't raise this matter—the response did—and as stated before, notice originating in the response cannot support an informal motion for summary judgment.

That Mr. Taylor responded to Ms. Rosado's confusion argument does not convince the court otherwise. Mr. Taylor first objects to any grant of summary judgment for Ms. Rosado, saying he didn't have enough time to respond to her motion. Thus, the court understands his response not as a waiver of the claim that he did not have enough time to reply, but as an argument in the alternative.

Had Mr. Taylor presented a persuasive response despite the short time available, the court could rule. But Mr. Taylor's argument starts from the premise, said to flow from Ms. Rosado's deposition testimony, that she was only confused about whether she had 20 or 23 days to answer the complaint—not about the relation of the 20/23 day deadline in the summons to the 30 day deadline in the notice. The argument's premise is faulty. In her deposition, Ms. Rosado slides between talking about 20, 23, and 30 day response times without evincing any understanding of where these limits come from and to what they apply. Deposition of Susanne A. Rosado, October 10, 2003, at 29–30, attached as Exhibit B in support of the Motion for Summary Judgment.

The court declines to enter summary judgment on this point in favor of either Ms. Rosado or Mr. Taylor.

## H.

■ The Act provides debt collectors with a limited escape hatch in the form of the bona fide error defense: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Mr. Taylor says the defense covers mistakes like his—unintentional mistakes of law occurring despite adequate prophylactic measures. Ms. Rosado responds that Mr. Taylor intentionally included in his letter the language that violates the FDCPA and that his procedures were inadequate. Summary judgment is inappropriate because Mr. Taylor hasn't precluded any finding other than that his errors were bona fide, or relatedly, unintentional.

The parties agree that Mr. Taylor intentionally included the allegedly offending language in the notice, and, apparently, that he did not intentionally violate the Act, but they disagree about the intent necessary to violate the Act. Mr. Taylor says the relevant intent is the intent to violate the FDCPA; Ms. Rosado says that what matters is whether Mr. Taylor intentionally did the thing that contravenes the FDCPA. Ms. Rosado did not respond to Mr. Taylor's claim that the Act applies to mistakes of law. As for the adequacy of the error avoidance procedures, Mr. Taylor says he "regularly attends seminars" on debt collection. Ms. Rosado responds simply that Mr. Taylor didn't enact sufficient procedures.

The bona fide error defense has spawned two closely related interpretive questions: what kind of intent is necessary to violate the Act, and whether the Act applies to legal errors. *See e.g., Frye v. Bowman, Heintz, Boscia, and Vician,* 193 F.Supp.2d 1070, 1084–1087 (S.D.Ind.2002) (discussing and linking the issues). If the statute covers clerical errors, then the relevant intent must be the intent to commit the act that violates the FDCPA. If the statute covers legal errors, however, the relevant intent must be the intent to violate the FDCPA.

Most courts facing this issue have decided that the bona fide error defense doesn't include legal errors. *Johnson v. Riddle,* 305 F.3d 1107, 1123 (10th Cir.2002) (making this observation). Many, if not all, of the opinions in the majority find their intellectual roots in *Baker v. G.C. Serv. Corp.,* 677 F.2d 775, 779 (9th Cir.1982), which excluded legal errors because of what it saw as the identity between the bona fide error defense in the FDCPA and the bona fide error defense in the Truth in Lending Act (TILA), which had, and has, been uniformly interpreted to apply only to clerical errors. *Id.*

*Baker* seems to overstate the similarity between the TILA and the FDCPA. The TILA defines bona fide errors as including, but not limited to, "clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error." [7] 15 U.S.C. § 1640(c). The FDCPA contains no such provision. *Jenkins v. Heintz,* 124 F.3d 824, 832 n. 7 (7th Cir.1997) (commenting on the scope of the defense without deciding the matter). To the contrary, by allowing for any "bona fide error," the plain language of the FDCPA allows for legal errors. A number of courts have reached the same conclusion. *Johnson v. Riddle,* 305 F.3d at 1121, 1123 (collecting cases and holding that the FDCPA applies to legal errors).

The Supreme Court's reflections in *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), buoy this conclusion. *Johnson v. Riddle,* 305 F.3d at 1123 (making this point). *Heintz* addressed whether the FDCPA covers litigation activity. A unanimous Court answered in the affirmative and along the way touched on the scope of the bona fide error defense. A lower court had thought that interpreting the Act to cover litigation activities "would make liable any litigating lawyer who brought, and then lost, a claim against a debtor." *Heintz v. Jenkins,* 514 U.S. at 295, 115 S.Ct. 1489. Invoking the bona fide error defense, the Court dismissed this concern.

> The [Sixth Circuit] reasoned that, were the Act to apply to litigating activities, this provision automatically would make liable any litigating lawyer who brought, and then lost, a claim against a debtor. But, the Act says explicitly that a "debt collector" may not be held liable if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Thus even if we were to assume that the suggested reading [of the statute] is correct, we would not find the result so absurd as to warrant implying an exemption for litigating lawyers.

*Id.* 295–296, 115 S.Ct. 1489 (citations omitted). As the Tenth Circuit noted, the Court's reasoning "at least suggests that the defense is available for mistakes of

---

**7.** To this court, all of the errors listed before "an error of legal judgment" are clerical errors.

law, because presumably mistake of law may contribute to the reasons why some of the underlying debt collection procedures are lost." *Johnson v. Riddle*, 305 F.3d at 1123.

■ From this understanding of the kinds of errors covered, it follows that the relevant intent is the intent to violate the FDCPA. For cases defining intention similarly, see *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.1998) and *Frye v. Bowman, Heintz, Boscia, and Vician*, 193 F.Supp.2d at 1087–1088. The relatively sparse case law seems in agreement that a bona fide error is one that is made in good faith. *Caputo v. Professional Recovery Services, Inc.*, 261 F.Supp.2d 1249, 1257 (D.Kan.2003) (collecting cases).

■ Viewed in the light most favorable to Ms. Rosado, Mr. Taylor hasn't come forth with evidence sufficient to establish by a preponderance of the evidence that his mistakes in drafting the notice were unintentional or that they were made in good faith (as required by the qualifier "bona fide"). He does not say, for example, that in stating the amount of the debt he relied on cases holding that the debt need only be stated as of a date certain rather than as of the date of the letter, or that he slipped the writing requirement into the debt disputation provision because of *Graziano* or its progeny. Instead, Mr. Taylor flatly proclaims that "[h]e believed that his written notice—to the extent it was even necessary for him to provide one—was sufficient and valid." A defendant pressing an affirmative defense is in the position of a plaintiff who moves for summary judgment and, as such, "needs to show that, on all essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991). Mr. Taylor hasn't done this, leaving it unnecessary for the court to address the appropriateness of the error avoidance procedures employed by Mr. Taylor.

Because factual matters remain to be resolved, neither party is entitled to summary judgment on the applicability of the bona fide error defense.

### IV. CONCLUSION

For the reasons stated above, the court GRANTS Ms. Rosado summary judgment on the § 1692g(a)(3) claim (regarding the propriety of requiring a written disputation), GRANTS Mr. Taylor summary judgment on the challenge to the adequacy of the debt statement in the complaint, DENIES Ms. Rosado summary judgment on the adequacy of the debt statement in the notice, GRANTS Mr. Taylor summary judgment on the propriety of the foreclosure complaint's requested attorney's fees, DENIES Mr. Taylor and Ms. Rosado summary judgment on whether the summons, foreclosure complaint, and notice are confusing, and DENIES Mr. Taylor's motion for summary judgment on the bona fide error defense.

SO ORDERED.